IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>SOLOMON B. SIMTOB,<br><br>　　　　　　　Defendant. | CR-05-130-GF-BMM<br><br>ORDER |

Defendant Solomon B. Simtob moves the Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (Docs. 145, 152.) Simtob is serving a sentence of 240 months followed by 8 years of supervised release for possession with intent to distribute methamphetamine and the distribution of methamphetamine. (Doc. 62 at 2-3.) Simtob has served more than 80 percent of his sentence. Simtob's scheduled release date is March 9, 2024. *See* Inmate Locator, www.bop.gov/inmateloc (last visited May 18, 2023). Simtob is currently incarcerated at Butner Low FCI II in North Carolina. *Id.*

### I.　Availability of Relief Under 18 U.S.C. § 3582.

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*,

411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amendments to 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A) prove especially relevant to Simtob's motion.

Where, as here, a motion for a sentence reduction is well taken, a court may modify a term of imprisonment following a finding that "extraordinary and compelling reasons warrant such a reduction." *Id.* When deciding whether to reduce a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)"), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)–(2).

Congress has not defined those circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the Sentencing Commission to issue a policy statement in which it describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448.

The relevant Sentencing Commission policy statement lies in USSG § 1B1.13, titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"). Notably, the Sentencing Commission has not amended the Policy Statement since passage of the First Step Act. *See United States v. Haynes*,

456 F. Supp. 3d 496, 507 (E.D.N.Y. 2020); *Brown*, 411 F. Supp. 3d at 448. A number of district courts have noted the unlikelihood of the Sentencing Commission updating the Policy Statement in the foreseeable future, as the Sentencing Commission requires four voting Commissioners to adopt a proposed amendment, and currently has only two voting Commissioners. *See, e.g., Haynes*, 456 F. Supp. 3d at 510 n.20; *Brown*, 411 F. Supp. 3d at 449 n.1; *United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 n.1 (S.D. Tex. 2019); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Handerhan*, No. 110-CR-00298, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019).

The "Commentary" to the Policy Statement lists five "Application Notes," the terms of which evidence the Policy Statement's inapplicability to the amended § 3582(c)(1)(A). *See* USSG § 1B1.13 n.1–5. Note 1 lists those circumstances that qualify as "extraordinary and compelling," including the defendant's medical condition, age, family circumstances, and "Other Reasons." *Id.* n.1(A)–(D). The "Other Reasons" subdivision to Note 1 provides as follows: "As determined by the Director of [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* n.1(D). Notes 4 and 5 likewise "speak plainly to

the BOP's exclusive gate-keeping authority pre-[First Step Act]." *Haynes*, 456 F. Supp. 3d at 508. Note 4 provides, for example, that a "reduction under this policy statement may be granted *only* upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)." USSG § 1B1.13 n.4 (emphasis added).

The pre-First Step Act Policy Statement does not account for amendments to § 3582(c)(1)(A), namely, removal of BOP's sentinel authority over sentence reduction petitions and extension to defendants of the right directly to move for a sentence reduction. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Policy Statement instead contemplates only motions filed by the BOP Director. *Id.*; *see also* USSG § 1B1.13.

When the First Step Act's amendments of § 3582(c)(1)(A) became effective, a split in authority emerged over whether the Policy Statement at USSG § 1B1.13 remained "applicable" to § 3582(c)(1)(A) motions directly filed by defendants. *See Beck*, 425 F. Supp. 3d at 579 (quoting § 3582(c)(1)(A)(i)'s requirement that a court's sentencing reduction must be "consistent" with any "applicable" policy statements); *Cantu*, 423 F. Supp. 3d at 351 ("Given the changes to [§ 3582(c)(1)(A)], the policy-statement provision that was previously applicable . . . no longer fits . . . and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582."); *Haynes*, 456 F. Supp. 3d at 511–13 (citing "at least twelve" other federal

4

district courts that have held the Policy Statement's "extraordinary and compelling reasons" list to be unexhaustive for defendants' direct sentence reduction motions).

The Ninth Circuit subsequently issued its decision in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). *Aruda* makes clear that the Policy Statement at USSG § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." 993 F.3d at 801. Where a court considers a sentence reduction motion directly filed by a defendant under the First Step Act, the substantive standards for what may qualify as extraordinary and compelling expand beyond the bounds of guidance provided in USSG § 1B1.13's Policy Statement Application Notes. *Id.* at 802; *see also Haynes*, 456 F. Supp. 3d at 511–13; *Cantu*, 423 F. Supp. 3d at 350–52; *Beck*, 425 F. Supp. 3d at 578–80 (M.D.N.C. 2019); *Brown*, 411 F. Supp. 3d at 451.

Although the Policy Statement may provide helpful guidance, *see United States v. Booker*, 543 U.S. 220, 245 (2005), "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). The Court will look to additional considerations outside those listed in the Policy Statement to determine whether extraordinary and compelling circumstances compel a reduction in Simtob's sentence.

5

## II. Whether Simtob has Demonstrated Extraordinary and Compelling Reasons.

The Sentencing Commission's policy statement regarding § 3582(c)(1)(A), which is set forth in USSG § 1B.13, sets out four categories of "extraordinary and compelling reasons." The first category covers prisoners with terminal medical conditions, the second addresses prisoners of advanced age, the third applies when a prisoner becomes the sole available caregiver for a child, due to the death or incapacitation of the other parent, and the fourth is a catch-all provision. *See*, U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). The second and fourth categories prove relevant to Simtob and are as follows:

> **Age of the Defendant** – the defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least ten years or 75 percent of his or her term of imprisonment, whichever is less.
>
> **Other Reasons** – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A)-(C).

*See*, U.S.S.G. § 1B1.13 cmt. n.1(B) and (D).

Simtob seeks compassionate release due to his advanced age and his related health problems, as well as the extraordinary length his 2006 sentence. (Doc. 152 at 7-8.)

6

Simtob is between 72 and 75 years old. Simtob's Pre-Sentence Report ("PSR") states that he was born on October 2, 1947, which would make him 75 years old. (Doc. 145.) His BOP medical records state that he was born three years later, on October 2, 1950. The author of Simtob's PSR noted this discrepancy and concluded that he was born in 1947. In paragraph 48, the PSR states that "[t]he defendant's birth father told him he was born in 1950, but a birth certificate revealed his birthdate was October 2, 1947." Whether Simtob is 72 or 75 years old proves minimally relevant. The relevant calculation is that Simtob is at least 65 years or older. *See* U.S.S.G. § 1B1.13 cmt. n.1(B).

Further, Simtob experiences various medical conditions, including faltering vision, dental problems, and knee pain. (Doc. 152 at 9.) Simtob states that he has cataracts and has lost 70 percent of his vision in his left eye. (Doc. 145.) He states that he has severe dental problems and has lost several teeth, which makes eating difficult. (*Id.*) He also claims to suffer from joint pain and that he is "'bone on bone' in [his] knees. (*Id.*) Simtob's medical records provide some support for his health claims. The medical records confirm that Simtob has cataracts and, during his last eye examination in September of 2022, he had a distance vision of 20/70. His medical records also reflect that, as of September of 2022, Simtob had top dentures and was in need of bottom dentures. They also indicate that he suffers from osteoporosis, which is likely the source of his knee pain.

Simtob has served at least ten years or 75 percent of his term of imprisonment. Simtob was sentenced in 2006 to a term of 240 months, or 20 years. Simtob has served 17 years of his 20-year sentence, which equates to approximately 85 percent of his term of imprisonment.

The Government opposes Simtob's Motion. (Doc. 154.) The Government maintains that Simtob fails to provide "extraordinary and compelling" reasons justifying his release. (*Id.* at 2.) The Government argues that neither Simtob's age nor medical conditions amounts to extraordinary and compelling reasons for a sentence reduction. (*Id.* at 9-12.) The Government further argues that Simtob's 240-month sentence is not unreasonable because the Ninth Circuit previously ruled that it was reasonable. (*Id.* at 12-13.)

The Court determines that extraordinary and compelling reasons exist to grant Simtob's motion for compassionate release. Extraordinary reasons exist to support early release in cases where the prisoner is 65 years or older, has serious health issues, and has served at least ten years or 75 percent of his sentence. *See*, U.S.S.G. § 1B1.13 cmt. n.1(B). Simtob is eligible for early release as he meets each of these three requirements outlined in the Sentencing Commission's policy statement regarding § 3582(c)(1)(A). With a projected release date of March 9, 2024, Simtob is requesting a *de minimis* reduction of his sentence. Due to the extraordinary and

compelling reasons presented by Simtob's present age, medical conditions, and time served, the Court will grant Simtob's motion for compassionate release.

### III. The 18 U.S.C. § 3553(a) Factors.

Before granting a defendant's motion for compassionate release, a court must "consider[] the factors set forth in section 3553(a) to the extent they are applicable." *See*, 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Courts also consider the kinds of sentences available, the need to avoid unwarranted disparity and the need to provide restitution to any victims of the offense.

A court should consider and give equal weight to each of the § 3553(a) factors to achieve the best possible sentence. *United States v. Zavala*, 443 F.3d 1165 (9th Cir. 2006); *United States v. Diaz-Argueta*, 447 F.3d 1167, 1171 (9th Cir. 2006). Concern over drug abuse and its effect upon society at large warrants accountability. Courts, however, may not then ignore or minimize other sentencing factors for the sake of imposing what it deems to be a sufficiently punitive sentence. *United States*

9

*v. Gardellini*, 545 F.3d 1089, 1095 (D.C. Cir. 2008) ("[T]he government's argument based on deterrence alone is flawed because it elevates one § 3553(a) factor – deterrence – above all others.").

Reducing Simtob's sentence to effectively a time-served sentence comports with the § 3553(a) sentencing factors. Simtob has served a sentence that reflects the seriousness of his offense, promotes respect for the law, and fulfills the need for "just punishment." §§ 3553(a)(1), (a)(2)(A). Simtob's crime was serious because of the danger that methamphetamine poses to communities. The nature and circumstances of Simtob's crime would not, today, however, be used to justify a 20-year sentence. At the time of his arrest, Simtob was a low-level drug dealer. The time he has served to date is more than sufficient to reflect its seriousness, promote respect for the law and provide just punishment. *See United States v. Stern*, 590 F.Supp.2d 945 (N.D. Ohio 2008).

As to specific deterrence, Simtob has served a lengthy sentence even with a sentence reduction. Seventeen and a half years is a long term of imprisonment, isolated from society and family. Requiring Simtob to serve additional incarceration would have little impact to deter him from committing additional crimes, particularly in light of his advanced age.

Simtob poses minimal danger to the community. Despite his past drug offenses, Simtob is presently approximately 75 years old and, upon release, Simtob

will be on supervised release with a probation officer that will help ensure that he remains law-abiding for the next eight years. Simtob's release will not expose the public to unwarranted risk.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Simtob's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**.

2. Pursuant to the original judgment and 18 USC 3582 (1)(A), the total term of supervised release shall be 8 years.

3. This Order is STAYED for up to 60 days.

4. The U.S. Probation Office must verify Simtob's residence and establish a release plan with an initial placement in a prerelease center for at least 30 days. Simtob shall be released directly from custody to the Great Falls Pre-Release Center or other approved facility. Appropriate travel arrangements also must be made.

5. Simtob shall be released on the earlier of the following dates:

    a. When the U.S. Probation Office is satisfied the requirements of paragraph four have been met; or

    b. Seventy (70) days from the date of this order.

6. If more than 60 days are needed to accomplish Simtob's release, the United States must notify the Court and demonstrate cause why the stay of this order should be extended.

7. The U.S. Probation Office shall review Simtob's conditions of supervised release. If modifications are needed, the Probation Office should notify the counsel for both parties.

11

8. Simtob must provide the Court with the complete address where he will reside upon release.

DATED this 23rd day of May, 2023.

_____
Brian Morris, Chief District Judge
United States District Court